Case No.  2:19-CV-14184-ROSENBERG/MAYNARD

FAISAL & A, LLC & FAISAL
IBRAHIM MOHAMED,

     Plaintiffs,

v.

UNITED STATES OF AMERICA,

     Defendant.

_____/

## ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction at docket entry 15.  Defendant filed a Response at docket entry 18.  Plaintiffs did not file a Reply.  Pursuant to the parties' agreement at docket entry 17, the Court did not set this matter for a hearing.  In the interest of expediency, the Court has taken the rendition of the background facts in this case from the parties' briefing papers.  For the reasons set forth below, Plaintiffs' Motion is denied.

## INTRODUCTION

This is a case about the redemption of food stamps.  Congress designed a food stamp program to alleviate hunger and malnutrition among low-income households by augmenting their ability to purchase food. 7 U.S.C. §§ 2011, 2013(a).  To that end, Congress provided for the issuance of food stamps that could be redeemed in exchange for food items from retail food stores that have been approved for participation in the Program.  7  U.S.C. § 2013(a).  As their name suggests, "food" stamps can only be used to purchase food, which is defined as "any food or food product for home consumption except alcoholic beverages, [and] tobacco . . . ."  7 U.S.C.

§ 2012(k). Coupons issued and used as provided in the statute are redeemed at face value by the Secretary through the facilities of the Treasury of the United States. 7 U.S.C. § 2013(a).

Plaintiffs' store, Tip Top Discount in Stuart, Florida, was first authorized to accept food stamps, now known as Supplemental Nutrition Assistance Program ("SNAP") benefits, in 2009. *See* DE 18-1, Exhibit A - Administrative Record ("AR"). In 2018, the Department of Agriculture Food and Nutrition Service ("FNS") initiated an investigation into Plaintiffs' store. (AR at 38-89). From April 19, 2018, through June 27, 2018, an FNS investigator and a confidential informant visited the store on seven occasions to engage in transactions to determine whether the store was engaged in unlawful practices in violation of FNS statutes and regulations. *Id*.

On five of the seven visits, the investigator documented SNAP violations by the Plaintiffs' store. *Id*. A store employee allowed the confidential informant to purchase non-food items using SNAP benefits.[1] *Id*. These included plastic forks, plastic spoons, straws, cups, bathroom tissue, and soap. *Id*.

On August 28, 2018, FNS sent Plaintiffs a Letter of Charges outlining the violations and assessing a six-month penalty for those violations. (AR at 69-70). Plaintiffs responded to the Letter of Charges by indicating that the store did not sell certain products identified in the investigator's report. (AR at 100). Plaintiffs argued that the prices of items purchased in one of the transactions did not add up to the correct total. *Id*. Over Plaintiffs' objections, however, FNS imposed a six-month disqualification of Plaintiffs' store from participating in the SNAP program on September 27, 2018. (AR 110-111). Plaintiffs administratively appealed the

---

[1] Plaintiff has raised certain challenges towards Defendant's evidence on this matter. The Court notes material disputes of fact below, but sets forth certain disputed facts here for background information purposes.

disqualification (*See* AR 119), but on April 24, 2019, FNS issued its Final Agency Decision

upholding the disqualification. (AR 129-136). The disqualification took effect approximately

31 days later and remains in effect as of this Order.

On May 28, 2019, Plaintiffs filed their Complaint in this action, seeking judicial review

of the FNS's Final Agency Decision upholding the six-month disqualification of Plaintiffs'

store from participation in the SNAP program. On August 30, 2019, Plaintiffs filed their

Motion for a Preliminary Injunction. DE 15.[2] Plaintiffs seek an Order staying the

disqualification of Plaintiffs' store from participating in SNAP until such time as the Court can

conduct a trial in this action or otherwise address the matter on its merits. *See* DE 15-1.

## **STATUTORY AND REGULATORY  BACKGROUND**

Chapter 7 of the United States Code, section 2021 provides for sanctions of retailers

who violate SNAP regulations. In pertinent part, subsection (a)(2) of the statute permits the

USDA to promulgate regulations pertaining to the criteria for finding a store in violation of the

SNAP regulations, and sanctions and penalties resulting therefrom. Congress described the

types of information that the Department could use in its evaluation of SNAP retailers:

> The Department may penalize a store on the basis of evidence that may include
> facts established through on-site investigations, inconsistent redemption data, or
> evidence obtained through a transaction report under an electronic benefit
> transfer system.

7 U.S.C. § 2021.

Under the authority granted to it by § 2021, USDA promulgated a series of regulations

that govern SNAP, including 7 C.F.R. §§ 271-285. SNAP violations are of three types: (1)

---

2 Prior to service and notice to the Defendant in this case, Plaintiffs elected not to file a motion for temporary restraining order (which permits injunctive relief without notice), and instead elected to only file a motion for preliminary injunction (which does require notice). The Court denied that motion without prejudice as Defendant had not yet appeared in this action. After Defendant appeared, Plaintiff filed the Motion presently before the Court.

discriminatory activity toward SNAP participants; (2) the sale of ineligible items, either conspicuous or minor in nature; and (3) trafficking. Each category of violation, together with the retailer's past history and the circumstances of the violations, warrant different sanctions under § 278.6. In this case, FNS has rendered a decision under § 278.6(e)(5), which states that a firm should be disqualified for six months where "evidence shows that personnel of the firm have committed violations such as but not limited to the sale of common nonfood items due to carelessness or poor supervision by the firm's ownership or management." 7 C.F.R. § 278.6.

## STANDARD OF REVIEW

Title 7 U.S.C. § 2023(13) provides for judicial review of a store's disqualification from participation with FNS' food stamp program. A district court conducts a *de novo* review to determine the validity of the administrative action at issue. 7 U.S.C. § 2023(15). The district court "must reach its own factual and legal conclusions based on the preponderance of evidence" and is not limited to facts solely from the administrative record. *Sims v. United States Dep't of Agriculture*, 860 F.2d 858, 862-63 (8th Cir. 1988).

The burden of proof is placed on the store owner to prove either that violations did not occur or that the sanction imposed was arbitrary and capricious. *Poeng v. United States*, 167 F. Supp. 2d 1136, 1138 (S.D. Cal. 2001) (denying motion for stay and upholding disqualification). If violations are proven, courts generally view the amount and scope of the sanction with some deference as a matter within the agency's discretion. *See Kogan v. United States*, 426 F. Supp. 1064 (E.D. Mo. 1977) (upholding store's food stamp disqualification for selling non-food items).

During the pendency of any judicial review, the general rule is that the administrative action under review "shall be and remain in full force and effect." 7 U.S.C. § 2023(a)(17). If the store seeks a stay of an administrative action, the Court should consider two factors: first, the applicant's likelihood of prevailing on the merits and second, irreparable injury. 7 U.S.C. § 2023(a)(17). When considering a motion for a stay involving Government action taken in the public interest, a traditional "balance of the equities" approach is not used, as the public interest in ensuring that limited funds are available for the needy recipients of the food stamp program is very strong. *Kim v. United States*, 822 F. Supp. 107, 109 (E.D.N.Y. 1993) (denying store a stay of three-year disqualification for selling non-food items); *see also Young Jin Choi v. United States*, 944 F. Supp. 323, 325 (S.D.N.Y. 1996) (stay applicant has rigorous burden of proof when movant seeks to stay governmental action taken in the public interest). Put simply, the Government's interest in reducing food stamp abuse through rapid disqualification is usually stronger than a store's interest in remaining in the program. *Food City, Inc. v. Rominger*, 917 F. Supp. 364, 367 (M.D. Cal. 1995).

## ANALYSIS

Plaintiffs have not met their burden to prove that the violations in this case "did not occur" or that the sanction imposed was "arbitrary and capricious." *See Poeng*, 167 F. Supp. 2d at 1138. Defendant's evidence of Plaintiffs' violations is very substantial. *E.g.,* AR at 38-68. Defendant has evidence in the form of receipts reflecting the purchase of non-food items and photographs of all of the purchased products. *Id.* Defendant also has evidence of the identity of Plaintiffs' store clerk at the time of purchase. *Id.* Finally, Defendant has evidence of violations even more serious than those actually charged—when an investigator asked to exchange his food stamps for cash, he

was allegedly told by Plaintiffs' clerk "he d[idn't] know him/her well enough *yet*." *Id.* (emphasis added).

Although Plaintiffs argue that the investigative evidence is unsworn, the statutes and regulations governing this case contain no requirement that the investigator's statements be sworn. Plaintiffs also dispute the accuracy of some of the Defendant's evidence, including disputing whether some of the items purchased by the investigator are sold at Plaintiffs' store. Finally, Plaintiffs argue that they had internal training policies in place such that they will prevail at trial in proving that they were neither careless nor poor in the supervision of the store clerks in this case.[3] But Defendant's evidence (investigator reports, actual receipts, and photographic evidence of the items purchased from the store) is strong, and the burden on Plaintiffs to obtain a preliminary injunction is high. Defendant has evidence of many violations across a significant period of time, and a permissible, reasonable inference from that evidence is that Plaintiffs' supervision and training of the employees was inadequate. As a general rule, Defendant's administrative action should remain in full force and effect, 7 U.S.C. § 2023(a)(17), and Plaintiffs can only obtain a stay of Defendant's administrative action if Plaintiffs establish a likelihood of success on the merits of their claim. *E.g., Plaza Health Labs, Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir. 1989). Here, Plaintiffs have not shown that they are likely to succeed in proving that the violations did not occur because of Defendant's substantial evidence. Additionally, Plaintiffs have not shown that they are likely to succeed in proving that Defendant's imposed penalty was arbitrary and capricious. For these reasons, Plaintiffs' Motion is denied.

---

3 Pursuant to 7 C.F.R. 278.6(e)(5), the penalty levied in this case is based upon Plaintiffs' careless or poor supervision of ownership or management.

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Preliminary

Injunction [DE 15] is **DENIED**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 25th day of

September, 2019.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record